In the United States Court of Appeals
For the Third Circuit

Case No. 21-3320

GEORGE PITSILIDES,

*Appellant*

v.

**WILLIAM P. BARR**, Attorney General of the United States; **THOMAS E. BRANDON**, Acting Director; Bureau of Alcohol, Tobacco, Firearms, and Explosives; **CHRISTOPHER A. WRAY**, Director of the Federal Bureau of Investigation, and; **UNITED STATES OF AMERICA**,

*Appellees*

## REPLY BRIEF OF APPELLANT

Richard S. Roberts, Jr., Esquire
Attorney for the Appellant
70 East Broad St., 2nd Floor, Bethlehem, PA 18018
Tel: 484-558-0076 / Fax: 484-202-6332
Email: rich@glawpa.com
Attorney ID: 318642                                      July 1, 2022

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................ii

Argument.................................................................................................................1-9

Conclusion................................................................................................................10

Certification of Bar Membership...........................................................................11

Certificate of Compliance.......................................................................................11

Certification of Identical Text and Virus Check..................................................12

Certificate of Service...............................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Binderup v. Attorney General United States of America*, 936 F.3d 336 (3d Cir. 2016)..................................................................................................*passim*

*Folajtar v. Attorney General of the United States*, 980 F.3d 897 (3rd Cir. 2020).......................................................................................................5

*Holloway v. Attorney General United States*, 948 F.3d 164 (3d Cir. 2020)...................5, 6

*New York State Rifle & Pistol Assn, Inc. et.al. v. Bruen*, 597 U.S. _____ (2022)................................................................................................8, 9

# ARGUMENT

## I. Appellees conflate criminalization with seriousness and their attempt to show a cross-jurisdictional consensus therefore fails.

The Appellees' arguments that a cross-jurisdictional consensus on seriousness exists are typified by their statement that ". . . bookmaking specifically, or at a minimum similar gambling-related activity, is criminalized under the law of every State and the District of Columbia." App Br. 19. The Appellees, here, seemingly conflate criminalization with seriousness. This Court, in as-applied challenges, held criminalization is not enough in and of itself. Rather it is only the seriousness of the criminalization that determines whether a consensus exists. *See Binderup v. Attorney General*, 836 F.3d 336, 352 (3d Cir. 2016) (holding "there is no cross-jurisdictional consensus regarding the **seriousness** of Challengers' crimes.") (emphasis added). Therefore, Appellees attempt to show that either "bookmaking" or "similar gambling-related activity," is criminalized in every state is arguably irrelevant without considering the severity of the penalties. App Br. 19. This is consistent with common sense. The fact that every state prohibits shoplifting would not make shoplifting a serious crime.

Considering for the moment the significance of universal criminalization as opposed to the severity of the punishment, it is important to observe that despite claiming illegality in every forum, the government backtracks to state that: "potentially all 51 U.S. jurisdictions criminalize bookmaking and pool selling." App. Br. 19; see also Appx80 (emphasis supplied). "Potentially all" isn't all.

It must also be noted that the district court found that 14 jurisdictions surveyed do not criminalize bookmaking and pool selling. Appx80. Bookmaking and pool selling are the crimes at issue in this case, not illegal gambling broadly. Thus, when comparing Pitsilides' actual crimes rather than "gambling related activity," criminalization clearly isn't universal, as only 73% of states criminalize Pitsilides conduct. Whether the Plaintiff's conduct would have been legal in several jurisdictions was expressly noted and considered by the *Binderup* Court. *See Binderup*, 836 F.3d at 352.

Returning to the clearly more relevant consideration of whether a consensus of states punish the relevant crimes severely, of the 37 jurisdictions that do criminalize bookmaking and pool selling, only 22 punish the crime with a maximum sentence over one year. So, when addressing the seriousness of bookmaking and pool selling, the crimes at issue in this case, based on the

district court's conclusion only 43% of jurisdictions criminalize the conduct in a serious enough way to strip Second Amendment rights.

As *Binderup* commands, a court must look at whether there is a "cross-jurisdictional consensus regarding the **seriousness** of the Challengers crimes," not simply whether the conduct is criminalized at all. *Id.* at 352 (emphasis added). Looking to the crimes at issue in this case "more than half [of jurisdictions] prescribe a maximum sentence that does not meet the threshold of traditional felony." *Id.* By showing that so many jurisdictions treat his crimes as non-serious, Pitsilides demonstrated there is no consensus regarding seriousness. Without consensus, Pitsilides' showing on this factor is compelling and must weigh in his favor.

Even when Appellees inappropriately expand the criminal conduct beyond the crimes at issue in this case, they fair only marginally better and do not show the relevant consensus as to severity of punishment. Of the 14 jurisdictions remaining that have laws against "illegal gambling" broadly only five jurisdictions punish those crimes serious enough to strip Second Amendment Rights. Adding those five jurisdictions to the 22 jurisdictions which punish the crimes at issue seriously, we end up with 27 total jurisdictions. While that raises the total to more than half of jurisdictions with sufficiently

severe penalties, that still falls short of a cross-jurisdictional consensus needed to show the crime is serious. In other words, even using "illegal gambling" broadly, only 53% of jurisdictions treat the crime as serious. This is not a consensus under any definition.

II. **Appellees' attempt to show seriousness by going beyond the cross-jurisdictional consensus question is not at issue in this appeal.**

In their brief Appellees attempt to show the seriousness of Pitsilides convictions beyond the cross-jurisdictional consensus question. They argue that "[l]egislatures have good reasons for making it a serious criminal offense to run unauthorized gambling operations." App. Br. 18. They go further by discussing the distinction, or lack thereof, between the misdemeanor classification, here, and the traditional felony classification. See App. Br. 23-25. This argument was attempted at the district court level and was rejected.

The district court held "[w]hile the likelihood that Pennsylvania law would prohibit Pitsilides from firearm ownership because of his convictions provides some support for the seriousness of his offense, courts in the Third Circuit have not given such a consideration greater weight than the misdemeanor-felony classicization . . . In light of these considerations, this

court finds the first factor in favor of Pitsilides." Appx77. This holding was not appealed.

The only issues on appeal regarding the seriousness of the crimes at issue revolve around the cross-jurisdictional consensus question. Under the district court's analysis, the only factor where Pitsilides failed was cross-jurisdictional consensus. Therefore, any attempt to show a serious offense by means outside the consensus question is not before this Court and any arguments to the contrary should not be considered.

III. **Assuming arguendo that a consensus exists, all other factors were found in Pitsilides' favor and therefore, on balance, he must succeed.**

Appellees argue that if this Court finds a cross-jurisdictional consensus there is no need to balance that against the other factors as "[t]his Court's decisions in *Binderup*, *Holloway*, and *Folajtar* supply the necessary framework, and none of those cases describe it as a similar sort of balancing test." App. Br. 27. Although the word "balance" may never be specifically used a balancing test is implied by the text of the decisions themselves. In fact, the district court here found that *Binderup* "describes the Marzarella framework as a balancing test . . . ." Appx84.

*Binderup* finds that "there are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights." *Binderup*, 836 F.3d at 351. When this Court decided *Binderup* the factors it considered was a non-exclusive list that included: "(1) whether the crime of conviction was classified as a misdemeanor or felony, (2) whether the criminal offense involves violence or attempted violence as an element, (3) the sentence imposed, and (4) whether there is a cross-jurisdictional consensus as to the seriousness of the crime." *Holloway*, 948 F.3d at 172 n. 10. *Holloway*, then adds an additional factor to consider, the potential for physical harm to others. *Id.* at 173.

This Court has never held that the original factors or additional factors considered in subsequent decisions must be met in every case to succeed in an as-applied Second Amendment challenge. In fact, this Court in *Holloway* observes that if a challenger makes a "strong" showing, the burden shifts back to the Government. *Id.* at 172. If this Court intended to create a test where every factor needed to be met in order to succeed it could hold that, but it has not. In fact, the district court, here, found "[w[hile *Binderup* describes the first step of the *Marzarella* framework as a balancing test . . .

." Appx84. Even the district court below recognized the balancing test under *Binderup*.

Bottom line is the non-exhaustive list of factors along with the observation that a challenger only needs to make a "strong" showing demonstrate the analysis, here, is a balancing test.

Admittedly, lower courts have struggled to apply this test. As Judge Fuentes makes clear in his concurring and dissenting opinion in *Binderup*, this Court provided a framework to lower courts for as-applied challenges, but he observed "they fail[ed] to provide [] any workable standards that would make such a regime administratively feasible or doctrinally coherent." *Binderup*, 836 F.3d at 380 (Fuentes, J concurring in part and dissenting in part and dissenting from the judgments). Here, Pitsilides simply asks, if this court finds a cross-jurisdictional consensus to provide workable standards.

In this case the district court admits this case falls close to the line. Appx82. Assuming there is a cross-jurisdictional consensus, that consensus is barely a consensus and when balancing a bare consensus against every other factor in favor of Pitsilides he has demonstrated his case is not serious.

7

## IV. If this Court finds Pitsilides demonstrated a lack of cross-jurisdictional consensus a remand is not necessary based on recent Supreme Court decision.

Appellees argue that if this Court finds Pitsilides crimes were not serious, it should remand to the district court for further proceedings. App. Br. 29. However, based on the Supreme Court's recent decision *New York State Rifle & Pistol Assn., Inc. v. Bruen*, a remand is not necessary as means-end scrutiny analysis is no longer required in Second Amendment cases.[1]

Following the Supreme Court's decisions in *Heller* and *McDonald*, "Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment Challenges that combines history with means-end scrutiny." *New York State Rifle & Pistol Assn, Inc. et.al. v. Bruen*, 597 U.S. \_\_\_\_ (2022) (slip op. at 8). The Court held that they "declined to adopt that two-part approach." *Id*. The focus is on historical tradition alone. *Id*.

If this Court concludes that Pitsilides' crimes are not serious then the crimes would not historically fall outside the Second Amendment's

---

[1] Appellant, here, does not assert that Appellees' request was incorrect at the time it was written. Based on prior case-law, a remand for a means-end scrutiny analysis would be appropriate if this Court found Pitsilides crimes were not serious. The recent Supreme Court case *New York State Rifle & Pistol Assn, Inc. et.al. v. Bruen*, changed the approach after the submission of Appellees' brief.

guarantee and therefore the government's prohibition would fall outside the Amendment's "unqualified command."[2] *Id.*

---

[2] *New York State Rifle* announced the standard for applying the Second Amendment is "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *New York State Rifle & Pistol Assn, Inc. et.al. v. Bruen,* 597 U.S. _____ (2022) (slip op. at 15). This new test regarding Second Amendment challenges may change the *Binderup* analysis beyond simply the means-end scrutiny. If this Court believes the seriousness analysis has changed based on the recent Supreme Court decision, we ask an opportunity to brief the issue as it was not raised in either Appellant's or Appellee's brief or remand the case to develop the record.

## CONCLUSION

There was not a showing of a cross-jurisdictional consensus in the facts of this case. Without a jurisdiction consensus the crimes at issue, here, are not serious and therefore a prohibition against firearms possession by Pitsilides is a violation of his Second Amendment Rights. The order of the district court must be reversed.

Respectfully submitted,

/s/ *Richard S. Roberts Jr.*

Richard S. Roberts, Jr., Esquire
Attorney for the Appellant
70 E. Broad Street, 2nd Floor
Bethlehem, PA 18104
Tel: 484-558-0076 / Fax: 484-202-6332
Email: rich@glawpa.com
Attorney ID: 318642

# CERTIFICATION OF BAR MEMBERSHIP

I, Richard S. Roberts, Jr., hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ Richard S. Roberts Jr.
_____
Richard S. Roberts, Jr., Esquire

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 28.1(e), the undersigned counsel of record for the appellant certifies that the foregoing brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 28.1(e)(2)(B) and Third Circuit Local Appellate Rules 32.1, 32.2, and 28.2. Exclusive of the portions exempted pursuant to Fed. R. App. P. 32(a)(7)(B), the foregoing brief contains 2326 words. This brief was prepared in a proportionally spaced typeface in Microsoft 365 Business Standard using 14-point Lyon Text Regular.

/s/ Richard S. Roberts Jr.
_____
Richard S. Roberts, Jr., Esquire

## CERTIFICATION OF IDENTICAL TEXT

I, Richard S. Roberts Jr., hereby certify that the text of the electronic copy and the hard copies of the foregoing document are identical.

/s/ *Richard S. Roberts Jr.*
_____
Richard S. Roberts, Jr., Esquire

## CERTIFICATION OF VIRUS CHECK

I, Richard S. Roberts Jr., hereby certify that a virus check was performed on the PDF file of the foregoing document prior to electronic filing using Norton Anti-Virus 360.

/s/ *Richard S. Roberts Jr.*
_____
Richard S. Roberts, Jr., Esquire

# CERTIFICATION OF SERVICE

I, Richard S. Roberts Jr., that, on July 1, 2022, I caused seven copies of the foregoing brief to be served, via United States First Class Mail, on the following:

Clerk's Office
U.S. Court of Appeals
21400 U.S. Courthouse
601 Market St. Philadelphia, PA 19106-1790

And I served a copy of the foregoing brief electronically on counsel for Appellee.

*/s/ Richard S. Roberts Jr.*
_____
Richard S. Roberts, Jr., Esquire